**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SPARTAN MEDICAL PRODUCTS, LLC,                    CV-

                             Plaintiff,

    - against -                              **NOTICE OF REMOVAL**

MAX AZEVEDO,

                          Defendant.



'07 CIV 10515

JUDGE KARAS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

       COMES NOW, Defendant Max Azevedo ("Defendant"), by and through his undersigned counsel, and pursuant to 28 U.S.C. § 1446, hereby gives notice that he has removed the action styled as <u>Spartan Medical Products, LLC v. Max Azevedo</u>, Index No. 21832/07, from the Supreme Court of the State of New York, County of Westchester, to the United States District Court for the Southern District of New York, showing the Court as follows:

      1.     Defendant is named as the defendant in the lawsuit styled as <u>Spartan Medical Products, LLC v. Max Azevedo</u>, Index No. 21832/07, filed in the Supreme Court of the State of New York, County of Westchester, on or about October 19, 2007.

      2.     On or about October 24, 2007, Defendant first received notice of the lawsuit filed by Plaintiff Spartan Medical Products, LLC ("Plaintiff") when a copy of the Summons and Complaint was left with a secretary at Defendant's place of business. Leaving aside the issue of whether this constituted proper service of process, this Notice of Removal has been filed within thirty (30) days after Defendant's initial receipt of notice of the lawsuit, thus satisfying the provisions of 28 U.S.C. §1446(b).

3.  This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiff is incorporated in the State of Delaware and maintains its principal place of business in White Plains, New York. Defendant is a resident of the State of Georgia.

4.  In accordance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings, and orders" received by Defendant in the state court action are attached hereto as Exhibit A.

5.  In accordance with 28 U.S.C. § 1446(d), written notice of this Notice of Removal has been provided to Plaintiff, by and through its counsel of record.  A true and correct copy of Defendant's Notice of Filing of Notice of Removal is attached hereto as Exhibit B.

6.  In accordance with 28 U.S.C. § 1446(d), a duplicate copy of this Notice of Removal has been filed with the Clerk of the Supreme Court of the State of New York, County of Westchester, contemporaneously with this filing.

7.  This Notice of Removal has merit, is non-frivolous and is not in violation of Rule 11 of the Federal Rules of Civil Procedure.

WHEREFORE, Defendant prays that this action be removed to the United States District Court for the Southern District of New York, and respectfully requests that the Supreme Court of the State of New York, County of Westchester proceed no further with respect to this action.

Dated:  Garden City, New York
        November 20, 2007

                        LAW OFFICES OF ROBERT L. DOUGHERTY

                        By: _____
                        ROBERT L. DOUGHERTY (RD4890)
                        Attorneys for Defendant
                        226 Seventh Street, Suite 200
                        Garden City. New York 11530-5723
                        (516) 873-0808

TO:    KAVANAGH MALONEY & OSNATO, LLP
       Attorneys for Plaintiff
       415 Madison Avenue, 18th Floor
       New York, New York 10017
       (212) 207-8400

-3-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SPARTAN MEDICAL PRODUCTS LLC,

                             Plaintiff,

                 -against-

MAX AZEVEDO,

                          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SUMMONS**

Index No. 21832/07

Date Filed: _____

Plaintiff designates
Westchester County as the
Place for Trial

The basis of the Venue is
the residence of Plaintiff
7 Moss Run
White Plains NY 10605.

TO:    MAX AZEVEDO
        1979 Wild Briar Lane
        Lenoir NC 28645

              YOU ARE HEREBY SUMMONED to answer the complaint in this action and to

serve a copy of your answer, or, if the complaint is not served with this summons, to serve a

notice of appearance, on the plaintiffs' attorneys within twenty (20) days after service of this

summons, exclusive of the day of service (or within 30 days after the service is complete if this

summons is not personally delivered to you within the State of New York). In the case of your

failure to appear or answer, judgment will be taken against you by default for the relief demanded

in the complaint.

Dated: October 19, 2007

                            KAVANAGH MALONEY & OSNATO LLP

                            By _____

                                Tom A. Holl
                           Attorneys for Plaintiffs
                           415 Madison Avenue
                           New York, N.Y. 10017
                           212-207-8400

{00011220.DOC 1}
00011220.DOC 1

SUPREME COURT OF THE STATE NEW YORK
COUNTY OF WESTCHESTER

-----------------------------------------------------------------x

SPARTAN MEDICAL PRODUCTS LLC,                          COMPLAINT

                        Plaintiff,

        -against-                                    Index No. ___2/832___ /07

MAX AZEVEDO,

                        Defendant.

-----------------------------------------------------------------x

        Plaintiff Spartan Medical Products LLC ("Spartan"), by its attorneys Kavanagh

Maloney & Osnato LLP, alleges for its Complaint against Defendant Max Azevedo

("Azevedo"), as follows:

## THE PARTIES

        1.      Plaintiff Spartan is a limited liability company organized and existing

under the laws of Delaware. It is authorized to do business in this State and resides in

Westchester County.

        2.      Spartan's principal place of business is 7 Moss Run, White Plains, NY

10605. Spartan's President and CEO is Robert Zimmerman of White Plains, NY.

Zimmerman is a 44.675% member of Spartan, a manager of Spartan, and one of the three

Spartan members comprising Spartan's three-person Board of Managers.

        3.      Spartan was created on January 1, 2004.

        4.      Spartan's LLC operating agreement, drafted and signed pursuant to the

Delaware Limited Liability Company Act, is dated July 19, 2004 (the "Operating

Agreement").

5.      Spartan is a bio-surgical medical device company specializing in all types of cyanoacrylates used to produce medical adhesives and sealants for both topical and internal body tissue.

6.      Since 2004, Spartan has developed unique methods, formulations and processes used to develop its product line of topical non-absorbable and internal bio-absorbable adhesives and sealants. Spartan has created unique and valuable information concerning its manufacturing processes, chemical formulations, and applicator packaging, as well as additional confidential and proprietary information, that allows its products to, *inter alia*, remain stable and effective for at least two years at room temperature.

7.      As a result of its substantial efforts and its expenditure of large sums of money in the creation and development of its technology, trade secrets, and the aforementioned confidential and proprietary information, Spartan has built up a valuable business within the high-technology bio-surgical and over-the-counter medical device business sector.

8.      Defendant Azevedo is an individual and resides at 1979 Wild Briar Lane, Lenoir, North Carolina 28645.

9.      Azevedo is a member of Spartan.

10.     Azevedo owns 44.675% of the outstanding units of Spartan.

11.     Azevedo signed the Operating Agreement.

12.     Prior to November 16, 2006, Azevedo was a manager of Spartan and a member of Spartan's Board of Managers. On November 16, 2006, Azevedo resigned as a member of Spartan's Board of Managers.

{00011221.DOC 1}                                    2

## JURISDICTION AND VENUE

13. This Court has personal jurisdiction over Azevedo pursuant to CPLR 301 and CPLR 302 because Azevedo, *inter alia*, transacted business within New York, contracted to supply goods and services in New York, committed tortious acts without New York causing injury in New York, was in 2004, 2005 and 2006, the President and a managing member of Spartan, and is now a 44.675% owner of Spartan.

14. Venue properly lies in this County pursuant to CPLR 503 because Spartan's principal office is located in this County and Spartan's President resides in this County.

## THE 2005 CONFIDENTIAL DISCLOSURE AGREEMENT

15. On April 29, 2005, Azevedo, as Spartan's President, signed a Confidential Disclosure Agreement ("CDA") with Femasys Inc.

16. Femasys was and is a company based in Suwanee, Georgia. Femasys makes, and is developing, a contraceptive medical device using a cyanoacrylate adhesive.

17. In the CDA signed by Azevedo, Spartan and Femasys set forth a strict procedure governing how they would share confidential information with each other.

18. In the CDA signed by Azevedo, Spartan is described as a company with valuable confidential information. Such confidential information was to be supplied to Femasys in a protected manner and the information was to be labeled as "Confidential."

19. After April 29, 2005, Spartan did provide Femasys with confidential information regarding its confidential cyanoacrylate technology and information, and did so as set forth in the CDA. For example, the documentary material provided to Femasys was marked "Confidential."

{00011221.DOC 1}

3

20. In October 2005, Femasys delivered a sample of a cyanoacrylate adhesive for Spartan to analyze. On October 31, 2005 Spartan sent the sample to an independent laboratory (Blue Ridge Labs) in order to determine the adhesive's composition. The laboratory's report was sent to Spartan, to the attention of Azevedo, on October 31, 2005. The report identified the product as a cyanoacrylate known as methoxy-isopropyl cyanoacrylate.

21. Thereafter, Femasys President and CEO Kathy Lee Sepsick and a Femasys scientist traveled to a Spartan facility to meet with Azevedo and view Spartan's confidential cyanoacrylate processing facility.

22. On November 3, 2005, Femasys sent Spartan, to the attention of Azevedo, a term sheet for a planned supply agreement between Spartan and Femasys. The term sheet defined the Product as "[a] cyanoacrylate material to be used as a permanent and possibly reversible contraceptive."

23. On November 18, 2005, Femasys sent Spartan, to the attention of Azevedo, its President, a proposed supply agreement.

24. On November 21, 2005, Zimmerman sent an email to Sepsick stating "your project fits well into the scope of our internal bio- absorbable cyanoacrylate development objectives and we view this as an important partnership." There was an attachment to Zimmerman's email highlighting in bold the changes to the contemplated supply agreement. This attachment stated in section 3, entitled "Payments," that Spartan would be paid a common and routine 10% royalty fee on Femasys annual sales. Also in the attachment was Exhibit C to the proposed supply agreement. This contained a phrase concerning the "Pricing of other Cyanoacrylates." This was added by Spartan because at

the time, Spartan determined that the development of methoxy grade cyanoacrylates for internal use (the use communicated by Femasys) was very much in Spartan's interest, and was a valuable corporate opportunity that would compliment Spartan's existing portfolio of octyl and butyl cyanoacrylate products.

25.    After January 2006, Zimmerman did not receive any further email correspondence from Sepsick or anyone else at Femasys.

## SPARTAN'S RELATIONSHIP WITH CLEMSON UNIVERSITY

26.    On July 26, 2005 Clemson University sent Spartan a written proposal for the "Development and Characterization of Tissue Adhesives." Messrs. Azevedo and Zimmerman approved the study and Spartan signed a research and development agreement with Clemson dated September 12, 2005.

27.    In September 2005, Spartan began working closely with Dr. Ken Webb and Dr. Jeoung Soo Lee of Clemson's Bioengineering Department. Spartan worked with Clemson's bioengineers in order to develop new patentable technology, namely topical and internal cyanoacrylate medical adhesives and sealants for bio-surgical and over-the-counter uses.

28.    The Spartan member-managers working with Webb and Lee were Azevedo, Zimmerman and Rafael Ruiz ("Ruiz"). At all relevant times in 2005 and 2006, Azevedo worked directly with the Clemson scientists to develop unique and valuable cyanoacrylate technology for Spartan.

29.    The collaboration between Spartan and Clemson had three specific aims: (1) close assessment of Spartan's cyanoacrylate adhesives as internal, bio-absorbable tissue adhesives and sealants, with accompanying assessment of degradation rates and

bio-compatibility; (2) investigation of the opportunity to create novel internal and topical adhesive materials by combining Spartan's cyanoacrylate monomers with other monomers; and (3) evaluation of other potential applications of Spartan's cyanoacrylate technology, such as inter-vertebral disc repair and endovascular stents.

30.     On April 11, 2006, Webb sent an email to Zimmerman, concerning the rat tests and surgeries involving Spartan's unique blends of cyanoacrylates. These types of cyanoacrylates were the exact type Femasys stated it required.

31.     Shortly after the rat tests and surgeries, the confidential, valuable Spartan cyanoacrylate technology and information developed by Spartan through its Clemson contract was placed onto CD-Rom discs (the "Clemson Discs"). One set of the Clemson Discs was provided to Azevedo, as he was Spartan's President and a member of Spartan's Board of Managers.

32.     The Clemson Discs contain all of the confidential, valuable and proprietary Spartan information developed with Clemson concerning the bio-absorbability of Spartan's proprietary cyanoacrylate formulations. After closely analyzing the Clemson Discs, Spartan concluded that it had developed unique and highly valuable information and technology. The information on the Clemson Discs was the basis for two Spartan U.S. Patent Office filings, one made in 2006, and another made in 2007.

## AZEVEDO'S COMPETITION WITH SPARTAN

33.     In the Summer of 2006, after obtaining his copy set of the Clemson Discs, Azevedo began a pattern of not cooperating with the other members of Spartan and not disclosing to Spartan his business activities.

{00011221.DOC 1}

34.    At some point after gaining possession of the Clemson Discs and without informing Spartan, Azevedo began working directly for Femasys, a company known to him to be a direct competitor of Spartan, and a company that had previously received some of Spartan's trade secrets pursuant to the CDA.

35.    Recently, Azevedo, through his position at Femasys, solicited and attempted to hire away one of Spartan's key employees, Sandeep Thapa.

36.    Azevedo, at a time to be determined, without informing Spartan, also began working directly with ABM Associates ("ABM") of Cincinnati, Ohio. On its website, abm-associates.com, ABM describes itself as a product consulting practice. Azevedo is a member of ABM's "Primary Team." On the ABM website, Azevedo is described as an expert in "chemical processing and manufacturing" with "a strong recent experience in the processing and manufacture of medical grade topical adhesives for wound closure."

37.    In the past, ABM worked directly with Closure Medical with respect to Johnson & Johnson's Dermabond product. Dermabond is a topical adhesive for lacerations that is based on Johnson & Johnson's proprietary 2-octyl cyanoacrylate technology.

## SPARTAN'S PATENTS

38.    Spartan has eight patents in its current patent portfolio. As described herein, it recently applied for two additional patents based on the information developed with Clemson and contained on the Clemson Discs.

39.    In the future, Spartan may have federal patent infringement claims against Azevedo, Femasys, and/or other persons in contact with Azevedo, and Spartan reserves all of its rights under the federal patent infringement statutes.

## FIRST CAUSE OF ACTION: MISAPPROPRIATION OF TRADE SECRETS

40.    Spartan's cyanoacrylate trade secrets, including without limitation: (1) the confidential information and items provided to Femasys pursuant to the CDA as described herein, and (2) the confidential information learned at Clemson and contained on the Clemson Discs, is and was valuable because it is Spartan's exclusive knowledge, Spartan has been vigilant to guard the information's secrecy, and the information gives Spartan a competitive advantage within the bio-surgical and over-the-counter medical device business sector.

41.    The confidential information and trade secrets Spartan has developed, concerning the chemistry, processing and packaging of medical grade cyanoacrylates, includes: (1) unique methods of activation either listed in its patents or not listed in its patents; (2) unique methods and information concerning the production of bio-absorbable cyanoacrylate adhesives and sealants; (3) unique methods and information concerning the control of the cyanoacrylate manufacturing process at all stages in order to yield high quality cyanoacrylates; (4) unique methods and information concerning the combination of various chemicals, during and after processing, to yield desired chemical and physical properties for topical and internal cyanoacrylate adhesives and sealants.

42.    Spartan's cyanoacrylate trade secrets are not readily ascertainable by others. Spartan's trade secrets are not available to persons outside of Spartan, and are

only made available to Spartan's member-managers, a group which has always numbered less than five persons.

43.    Spartan has taken various measures to preserve the secrecy of its trade secrets, including having all of its personnel that are not members in the LLC to sign a "Spartan Medical Products Employee Invention, Assignment, Confidentiality and Non-Competition Agreement."

44.    Spartan has expended considerable time and effort in developing its cyanoacrylate trade secrets. For example, in addition to its work with Clemson, Spartan has conducted numerous expensive outside laboratory testing to validate the efficacy and safety of all its medical device products. These expensive and comprehensive tests must be conducted for FDA and CE Mark regulatory approvals on each and every product. Spartan spends considerable sums on regulatory consultants and patent attorneys to protect its technology. Spartan maintains a comprehensive file of Confidential Disclosure Agreements with consultants and companies interested in entering into business contracts for the supply of Spartan's cyanoacrylate products.

45.    Spartan's trade secrets afford it an essential competitive edge in the marketplace and are important to the continuing operations of Spartan.

46.    Azevedo acquired Spartan's cyanoacrylate trade secrets while a manager-member of Spartan.

47.    In 2006, Azevedo wrongfully took from Spartan: all but one of the lab books he kept concerning cyanoacrylates; production batch sheets, a specialized laboratory glass reactor; and the Clemson Discs.

48.    Azevedo, after acquiring Spartan's trade secrets and confidential information as described herein, used it to Spartan's great detriment. Spartan was hoping to close its first bio-absorbable internal cyanoacrylate deal with Femasys. Once Femasys attained FDA and CE Mark approvals, the value of Spartan's business with Femasys, as outlined in the 2005 and 2006 correspondence between the companies, could have reasonably exceeded $10 million per year in profits. And in 2005 and 2006, Spartan believed, based on its proprietary cyanoacrylate information, that within 24 months or less it could develop the safe internal bio absorbable medical device that Femasys needed. However, now that Azevedo works for Femasys and Azevedo is providing Femasys with the cyanoacrylate technology and information he acquired while a managing-member of Spartan, Spartan is prevented from developing the cyanoacrylates for the Femasys device.

49.    Azevedo is and has been wrongfully using and disclosing Spartan's trade secrets. As a result, Spartan seeks as damages the lost profits sustained by reason of Azevedo's wrongful conduct, in an amount of at least $10 million.

## SECOND CAUSE OF ACTION:
## BREACH OF FIDUCIARY DUTY (as Manager-Member)

50.    Under Delaware law, Azevedo, while a trusted Spartan member-manager owed fiduciary duties to Spartan. These fiduciary duties included the duty of loyalty to Spartan, the duty of good faith, and the duty to act in the best interest of Spartan.

51.    As described herein, Azevedo, while a Spartan member-manager, violated his fiduciary duties to Spartan by competing with Spartan, by surreptitiously and without the knowledge or consent of Spartan, diverting Spartan's cyanoacrylate opportunities and trade secrets to others, by directly working for other entities including Femasys that

compete with Spartan, and by refusing to return to Spartan his copy set of the Clemson

Discs, his lab notes and the production batch sheets.

52.     Azevedo's breach of fiduciary duties caused substantial damage to

Spartan. Spartan has sustained damages in the amount of profits it would have enjoyed

but for Azevedo's wrongdoing and competition, in the amount of at least $10 million.

## THIRD CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY (as Member)

53.     Azevedo resigned from Spartan's Board of Managers on November 16,

2006.

54.     Azevedo is a 44.675% member of Spartan. As a substantial owner of

Spartan, Azevedo has, and had, fiduciary duties to Spartan and to Spartan's other

members, including Zimmerman and Ruiz. These duties included the duty not to compete

with Spartan and the duty to act in Spartan's best interests.

55.     As described herein, Azevedo violated those duties by, for example, his

employment with Femasys and ABM; his failure to disclose to Spartan his competitive

activities, his seeking to hire away Mr. Thapa from Spartan so that Mr. Thapa could join

Femasys, the Spartan competitor for which Azevedo now works.

56.     ` Azevedo's breach of his fiduciary duties since November 16, 2006, have

caused substantial damage to Spartan, in an amount of not less than $10 million.

## FOURTH CAUSE OF ACTION: BREACH OF THE OPERATING AGREEMENT

57.     Azevedo signed the Operating Agreement. Section 4.7 of the Operating

Agreement states that "the members of the Board of Managers, the Officers, any Member

or other Person acting on behalf of the Company shall act in a manner it believes in good

faith to be in the best interests of the Company and with the care an ordinarily prudent

Person in a like position would exercise under similar circumstances." Section 4.9(a) of the Operating Agreement states that "[d]uring the term of this Agreement, each Member agrees not to participate in any other business that would likely compete with the Business of the Company." Under Section 4.9(c), Azevedo was prohibited from competing against Spartan with respect to any medical and/or cosmetic purpose.

58.    As described herein, Azevedo has breached the Operating Agreement, including without limitation, Sections 4.7, 4.9(a) and 4.9(c) therein.

59.    Azevedo's breach of the Operating Agreement has caused substantial damage to Spartan, including lost profits, in an amount of at least $10 million.

## FIFTH CAUSE OF ACTION: CONVERSION

60.    As described herein, Azevedo wrongfully took, and continues to keep and possess, Spartan's Clemson Discs, lab notes, and production batch sheets.

61.    On numerous occasions, Spartan has requested that Azevedo return these items to it, and Azevedo has refused to do so. The last such request was a letter to Azevedo dated September 20, 2007.

62.    This has caused Spartan substantial damage, in an amount to be determined at trial. In the alternative, Spartan requests that this Court order Azevedo to return to Spartan all originals and copies of the Clemson Discs, lab notes and production batch sheets.

## SIXTH CAUSE OF ACTION: ACCOUNTING TO SPARTAN

63.    Azevedo must account for the fruits of his wrongdoing, including all diverted Spartan assets, trade secrets, contracts and business opportunities.

64.    Spartan respectfully requests that Azevedo open his books and records so that Spartan can examine all of his transactions and activities with Femasys, ABM, and any other persons or entities that compete or could in the future compete with Spartan, such that Spartan can determine the amounts that Azevedo gained as a result of diverting Spartan's opportunities and trade secrets to others.

### SEVENTH CAUSE OF ACTION: CONSTRUCTIVE TRUST

65.    Spartan respectfully requests that this Court impress a trust upon those funds generated for Azevedo, Femasys, ABM or others, through Azevedo's diversion of Spartan's opportunities and trade secrets.

### EIGHTH CAUSE OF ACTION: INJUNCTION

66.    Azevedo has disclosed Spartan's trade secrets to others.

67.    In the future, Azevedo may again disclose Spartan's trade secrets to others. Spartan will be irreparably damaged and injured in its business by Azevedo's further disclosure of Spartan's trade secrets, if Azevedo is not enjoined from such activity. There is no adequate remedy at law for such injury.

68.    Spartan requests an injunction that restrains Azevedo from using or disclosing Spartan's trade secrets pending the outcome of trial. After trial, Spartan requests that a permanent injunction be issued restraining Azevedo from using or disclosing Spartan's trade secrets.

69.    As part of the preliminary injunction order, Spartan requests that Azevedo be required to return to Spartan all originals and copies of the Clemson Discs, lab notes and production batch sheets.

WHEREFORE, Spartan seeks against Defendant Azevedo:

(a) a judgment in an amount of at least $10,000,000.00, plus 9% statutory interest pursuant to CPLR 5001 and 50004; and/or

(b) an order that Azevedo make an accounting to Spartan as described herein; and/or

(c) an order that a constructive trust be impressed upon those funds generated for Azevedo, Pemasys, ABM or others, through Azevedo's diversion of Spartan's opportunities and trade secrets; and/or

(d) an order for preliminary injunction restraining Azevedo from using or disclosing Spartan's trade secrets pending the conclusion of trial; and/or

(e) a judgment containing a permanent injunction against Azevedo restraining him from using or disclosing Spartan's trade secrets; and/or

(f) an order commanding Azevedo to return to Spartan all originals and copies of the Clemson Discs, the lab notes and the books; and/or

(g) such other relief as this Court deems just and proper.

Dated: October 19, 2007

KAVANAGH MALONEY & OSNATO LLP

By: _____
     Jorn A. Holl
415 Madison Avenue, 18th Floor
New York NY 10017
(212) 207-8400

(00011221.DOC 1)                    14

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SPARTAN MEDICAL PRODUCTS, LLC,

                                                             Index No. 21832/07

                                        Plaintiff,

    - against -

MAX AZEVEDO,

                                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE that on November 20, 2007, Defendant Max Azevedo ("Defendant"), by and through its undersigned counsel, removed this action to the United States District Court for the Southern District of New York, pursuant to the provisions of 28 U.S.C. § 1441 *et seq.*  Accordingly, as provided in 28 U.S.C. § 1446(d), the Supreme Court of the State of New York, County of Westchester, may proceed no further unless and until the case is remanded by the United States District Court for the Southern District of New York.

A copy of Defendant's Notice of Removal is attached hereto as Exhibit A and has been served on Plaintiff's counsel.

Dated:    Garden City, New York
          November 20, 2007

                            LAW OFFICES OF ROBERT L. DOUGHERTY

                            By: _____
                            ROBERT L. DOUGHERTY
                            Attorneys for Defendant
                            226 Seventh Street, Suite 200
                            Garden City, New York 11530-5723
                            (516) 873-0808

-1-

TO:    KAVANAGH MALONEY & OSNATO, LLP
       Attorneys for Plaintiff
       415 Madison Avenue, 18th Floor
       New York, New York 10017
       (212) 207-8400

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NASSAU   )

DEBRA S. FIANCE, being duly sworn, deposes and says:

That I am over the age of twenty-one (21) years and that I reside at West Babylon, New York and am not a party to this action.

That on the 20th day of November, 2007, I served the within Notice of Filing of Notice of Removal upon the party listed below by depositing a true copy thereof in a properly sealed postpaid wrapper, in a post office box regularly maintained by the Government of the United States located in front of premises known as 226 Seventh Street, Garden City, New York addressed as follows:

KAVANAGH MALONEY & OSNATO, LLP
415 Madison Avenue, 18th Floor
New York, New York 10017

that being the address designated on the latest papers served by them in the action.

DEBRA S. FIANCE

Sworn to before me this
20th day of November, 2007.

Notary Public

ROBERT L. DOUGHERTY
NOTARY PUBLIC, State of New York
No. 4792110
Qualified in Nassau County,
Commission Expires March 30, 19
Sept   2009

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF NASSAU  )

DEBRA S. FIANCE, being duly sworn, deposes and says:

That I am over the age of twenty-one (21) years and that I reside at West Babylon, New York and am not a party to this action.

That on the 20th day of November, 2007, I served the within Notice of Removal upon the party listed below by depositing a true copy thereof in a properly sealed postpaid wrapper, in a post office box regularly maintained by the Government of the United States located in front of premises known as 226 Seventh Street, Garden City, New York addressed as follows:

KAVANAGH MALONEY & OSNATO, LLP
415 Madison Avenue, 18th Floor
New York, New York 10017

that being the address designated on the latest papers served by them in the action.

DEBRA S. FIANCE

Sworn to before me this
20th day of November, 2007.

Notary Public

ROBERT L. DOUGHERTY
NOTARY PUBLIC, State of New York
No. 4792110
Qualified in Nassau County
Commission Expires March 30, 19
Sept 2009